## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DETECT TANK SERVICES LLC, et al.,

               Plaintiffs,

      v.

ADMIRAL INSURANCE COMPANY,

         Defendant.

CIVIL ACTION NO. 3:21-CV-02012

(MEHALCHICK, M.J.)

## MEMORANDUM

Before the Court is a motion for summary judgment filed by Defendant Admiral Insurance Company ("Admiral") on November 1, 2022. (Doc. 25). Plaintiffs Detect Tank Services LLC ("Detect") and Mott Tank Inspection, Inc. ("Mott") (collectively, "Plaintiffs") initiated this declaratory judgment action by filing a writ of summons and a complaint against Admiral in the Court of Common Pleas of Lackawanna County, Pennsylvania, on October 19, 2020, and November 8, 2021, respectively. (Doc. 1-1, at 2-4; Doc. 1-2, at 3-4). On November 29, 2021, Admiral removed this action to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 7). For the following reasons, Defendants' motion for summary judgment will be GRANTED.

## I.   BACKGROUND AND PROCEDURAL HISTORY

This factual background is taken from Admiral's statement of material facts and accompanying exhibits. (Doc. 25-1). Local Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement of material facts, in numbered

paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. The non-movant must file a statement in response to the movant's statement that responds to the numbered paragraphs in the movant's statement and sets forth which paragraphs present a genuine issue of material fact. M.D. Pa. L.R. 56.1. Any facts that are set forth in the movant's statement that are not contradicted by the non-movant's statement are "deemed to be admitted." M.D. Pa. L.R. 56.1.

In this case, Admiral filed a statement of material facts as required by Local Rule 56.1, but Plaintiffs did not respond to Admiral's statement and instead only filed a brief in opposition that described the underlying facts in narrative rather than numbered paragraph form. (Doc. 25-1; Doc. 26). Because Plaintiffs have failed to respond to Admiral's statement, the facts in the statement of material facts are deemed admitted. *See* M.D. Pa. L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *Landmesser v. Hazleton Area Sch. Dist.*, 982 F. Supp. 2d 408, 413 (M.D. Pa. 2013) (deeming facts admitted under Local Rule 56.1); *see also Conn v. Bull*, 307 F. App'x 631, 633 (3d Cir. 2009) (upholding district court's decision to deem facts admitted under Local Rule 56.1.).

A. STATEMENT OF MATERIAL FACTS

On June 12, 2018, real property located at 1214 Bristol Pike, Bensalem, Pennsylvania (the "Premises"), was being operated by Vigilante Enterprises, Inc., as a gas and service station. (Doc. 25-1, ¶ 1; Doc. 3, at 12, 25). The Premises is alleged to have contained three underground gasoline storage tanks, each of which was encapsulated in its own concrete vault. (Doc. 25-1, ¶ 2; Doc. 3, at 18, 71). The underlying plaintiffs, Frank Tomasiello and

Gina Vigilante, Executrix of the Estate of Joseph Vigilante (collectively, "Underlying Plaintiffs"), allege that "each concrete vault which encapsulated its companion tank should have been equipped with, or affixed with, both a liquid sensor and a vapor sensor to prevent the creation and/or existence of a dangerous condition which could cause serious bodily harm or death to persons legally upon said Premises." (Doc. 25-1, ¶ 3; Doc. 3, at 19, 72). The Underlying Plaintiffs allege that, of the three tanks and vaults, only Vault 3 was set up correctly with a functioning vapor sensor and a functioning liquid sensor. (Doc. 25-1, ¶ 4; Doc. 3, at 19, 72-73). The Underlying Plaintiffs allege that the "subject incident occurred in Vault and Tank Number Two." (Doc. 25-1, ¶ 5; Doc. 3, at 71). The Underlying Plaintiffs allege that Vault 2 was set up incorrectly from the start, as it had only two liquid sensors, neither one of which worked properly. (Doc. 25-1, ¶ 6; Doc. 3, at 20, 72-73). The Underlying Plaintiffs do not allege that Mott was involved in or had anything to do with the design, selection, construction, or installation of any underground storage tank, vault, sensor, or other safety equipment or any kind at the Premises. (Doc. 25-1, ¶¶ 7-9; Doc. 3, at 9-117).

However, the Underlying Plaintiffs do allege that Mott inspected Tank 2 on June 9, 2015. (Doc. 25-1, ¶ 10; Doc. 3, at 22, 77). The Underlying Plaintiffs do allege that one of Mott's inspectors was Alden Ayers and that Deborah Ayers was employed by Mott at the time of the accident. (Doc. 25-1, ¶¶ 11-12; Doc. 3, at 16, 22, 69, 75). The Underlying Plaintiffs do allege that Joseph Kelly was an employee of Mott and performed the inspection on the Premises. (Doc. 25-1, ¶ 13; Doc. 3, at 16, 70). Alden Ayers, Deborah Ayers, and Joseph Kelly are not parties to this action. (Doc. 25-1, ¶ 14; Doc. 3, at 9-117). Detect Tank Services, LLC ("Detect"), is alleged to be a successor entity to Mott. (Doc. 25-1, ¶ 15; Doc. 3, at 16, 70). The

Underlying Plaintiffs allege that Mott allowed Tank 2 to remain in service and set the next inspection for ten (10) years. (Doc. 25-1, ¶ 16; Doc. 3, at 22, 75).

On June 12, 2018, Joseph Vigilante was killed and Frank Tomasiello was severely injured from an alleged explosion of underground gasoline storage tanks. (Doc. 25-1, ¶ 17; Doc. 23, at 1). The Underlying Plaintiffs filed civil lawsuits against Mott and Detect, among numerous others, captioned: *Gina Vigilante, Executrix of the Estate of Joseph Vigilante v. Ewing Oil, Inc., et al.*, docketed before the Court of Common Pleas of Philadelphia County, December Term 2020, at No. 3369, and *Frank Tomasiello v. Ewing Oil, Inc., et al.*, docketed before the Court of Common Pleas of Philadelphia County, February Term 2020, at No. 2173 (collectively, the "Underlying Lawsuits").[1] (Doc. 25-1, ¶ 18; Doc. 3, at 9, 61). The underlying complaints contain counts alleging negligence on the part of Mott and wrongful death against all defendants, including Mott and Detect. (Doc. 25-1, ¶¶ 19-20; Doc. 3, at 52, 106). Plaintiffs tendered the underlying complaints to Admiral for an insurance coverage defense, which tender was declined by Admiral. (Doc. 25-1, ¶ 21).

B. The Insurance Policies

According to the Certificate of Liability, dated October 9, 2015, Admiral issued to Mott a Commercial General Liability Policy (the "Primary Policy"), identified by policy

---

[1] Courts in the Third Circuit have held that a court may take judicial notice of dockets or other court opinions at the motion to dismiss stage. *In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005) (taking judicial notice of "state court proceedings insofar as they are relevant"); *see, e.g., In re Trichilo*, 540 B.R. 547, 549 (Bankr. M.D. Pa. 2015) (taking judicial notice of an underlying case's docket); *Mollett v. Leith*, No. 09-1192, 2011 WL 5407359, at *2 (W.D. Pa. Nov. 8, 2011) ("A court may also take judicial notice of the docket in Plaintiffs' underlying criminal trial."), *aff'd sub nom. Mollett v. Leicth*, 511 F. App'x 172 (3d Cir. 2013); *Carroll v. Prothonotary*, No. 08-1683, 2008 WL 5429622, at *2 (W.D. Pa. Dec. 31, 2008) (taking judicial notice of court records and dockets of federal district courts)). Therefore, the Court takes judicial notice of the state court dockets and complaints filed in the Underlying Lawsuit, which are attached to Admiral's answer. (Doc. 3, at 9, 61).

number FEI-ECC-12228-02, and an Umbrella Liability Insurance Policy (the "Umbrella Policy"), identified by policy number FEI-EXS-12229-02 (collectively, the "Policies"). (Doc. 25-1, ¶ 22; Doc. 1, ¶ 8). Plaintiffs allege that Admiral has a duty to defend and indemnify Plaintiffs "pursuant to the express and implied terms of the policies." (Doc. 25-1, ¶ 22; Doc. 1, ¶ 10). Plaintiffs contend that policy numbers FEI-ECC-12228-02 and FEI-EXS-12229-02 were in effect for the period January 14, 2015, to January 14, 2016. (Doc. 25-1, ¶ 23).

Regarding the Primary Policy, the Declarations section identifies Mott as the "Named Insured," and the period of coverage as commencing on January 14, 2015, and expiring on January 14, 2016. (Doc. 28-1, at 1). The Coverages section of bodily injury and property damage liability provides:

1. Insuring Agreement

   a. We will pay those sums that the insured become legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplemental Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" or "property damage" only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and . . . .

(Doc. 28-1, at 5).

The Primary Policy contains the following relevant definitions:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Doc. 28-1, at 24, 26).

Under the Primary Policy, Admiral agreed to insure Mott against damages from "bodily injury" and "property damage" claims up to $1 million per "occurrence" and $2 million in the aggregate. (Doc. 28-1, at 2).

Next, regarding the Umbrella Policy, the Declarations section identifies Mott as the "Named Insured," Admiral as the "Primary Insurer," and the period of coverage as commencing on January 14, 2015, and expiring on January 14, 2016. (Doc. 28-2, at 1). The insuring clause of the Umbrella Policy provides as follows:

> The Company shall provide the *Insureds* with insurance during the *Policy Period* excess of the *Underlying Limit*. Coverage hereunder shall attach only after the insurers of the *Underlying Insurance* shall have paid in legal currency the full amount of the *Underlying Limit* for such *Policy Period*. Coverage hereunder shall then apply in conformance with the terms and conditions of the *Primary Policy*.

(Doc. 28-2, at 4).

Section XIII, Policy Definitions, of the Umbrella Policy provides the following relevant definitions:

> *Insureds* means those persons or organizations insured under the *Primary Policy*.

*Primary Policy* means the policy schedule in Item 5. of the Declarations or any policy of the same insurer replacing or renewing such policy.

*Policy Period* means the period of time specified in Item 2. of the Declarations, subject to prior termination in accordance with Section XII. above. If any extended reporting period is exercised, such extension shall be treated as set forth in the *Primary Policy*.

*Underlying Insurance* means all policies scheduled in Item 5. of the Declarations and any policies of the same insurers replacing or renewing them.

*Underlying Limit* means the amount equal to the aggregate of all limits of liability as set forth in Item 5. of the Declarations for all *Underlying Insurance* subject to any *Sublimits*, plus the uninsured retention, if any, under the *Primary Policy*.

(Doc. 28-2, at 7-8).

C. PROCEDURAL HISTORY

Plaintiffs initiated this declaratory judgment action by filing a writ of summons and a complaint against Admiral in the Court of Common Pleas of Lackawanna County, Pennsylvania, on October 19, 2020, and November 8, 2021, respectively. (Doc. 1-1, at 2-4; Doc. 1-2, at 3-4). According to Plaintiffs, "[Admiral] issued to [Mott] a Commercial for General Liability and Umbrella Liability Insurance Policies for the period of January 14, 2015 to January 14, 2016." (Doc. 1-2, ¶ 8). Attached to the complaint is a copy of the Certificate of Liability Insurance. (Doc. 1-2, at 6). Plaintiffs aver that, if proved "that the death of Joseph Vigilante and/or injuries of Frank Tomasiello were caused by the negligence of Mott," and judgment is entered against Mott in the Underlying Lawsuits, "the coverage provided by the said insurance policy insures to the benefit of [Detect], as successor-in-interest." (Doc. 1-2, ¶ 9). Thus, Plaintiffs argue "pursuant to the express and implied terms of the policies, [Admiral] is required to defend the [Underlying Lawsuits] on behalf of the Plaintiffs, to bear all costs of such defense, and to indemnify the Plaintiffs against any and all losses Plaintiffs may become

legally obligated to pay as a result of the [Underlying Lawsuits]." (Doc. 1-2, ¶ 10). Plaintiffs state that on August 9, 2020, and November 12, 2020, Admiral notified Plaintiffs that it was denying coverage. (Doc. 1-2, ¶ 11). As such, Plaintiffs request the Court to enter judgment: (1) declaring that Admiral has a duty to defend Plaintiffs in the Underlying Lawsuits, to bear all costs of such defense, and to reimburse Plaintiffs for all of their costs and legal fees incurred in the Underlying Lawsuits and in pursuing the instant action; (2) declaring that Admiral shall be required to indemnify Plaintiffs from and against any and all liability arising out of the Underlying Lawsuits; and (3) granting such further relief as the Court may deem appropriate. (Doc. 1-2, at 4)

Admiral filed the notice of removal on November 29, 2021, removing this action to the Middle District of Pennsylvania. (Doc. 1). On December 15, 2021, Admiral filed its answer to the complaint. (Doc. 3). On March 7, 2022, Admiral filed a motion for judgment on the pleadings. (Doc. 10). On September 6, 2022, the Court denied Admiral's motion for judgment on the pleadings, finding that because the relevant Policies were not present in the record, the Court could not conclude that the pleadings demonstrate that there is no genuine issue of fact and Admiral is entitled to judgment as a matter of law. (Doc. 23; Doc. 24).

On November 1, 2022, Admiral filed the motion for summary judgment. (Doc. 25). The motion has been fully briefed and is ripe for disposition. (Doc. 25; Doc. 26; Doc. 27; Doc. 28).

## II.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might

affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'" *Velentzas v. U.S.*, No. 4: 07-CV-1255, 2010 WL 3896192, at *7 (M.D. Pa. Aug. 31, 2010) (quoting *Goode v. Nash*, 241 F. App'x 868, 869 (3d Cir. 2007)) (citation omitted); *see also Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring

parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Velentzas*, 2010 WL 3896192, at *7 (quoting *Goode*, 241 F. App'x at 869). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jakimas v. Hoffmann–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III.   DISCUSSION

In the complaint, Plaintiffs allege that Admiral is contractually obligated to provide Plaintiffs with a defense and, if necessary, indemnification under the Policies that Admiral issued to Plaintiffs on October 9, 2015. (Doc. 1, ¶ 8; Doc. 27, at 13). Admiral presents two arguments as to why summary judgment is warranted. First, Admiral argues Plaintiffs have failed to produce a copy of the relevant Policies, which are attached to Admiral's reply brief filed on December 5, 2022. (Doc. 25, ¶ 31; Doc. 26, at 6-7; Doc. 28-1; Doc. 28-2). Admiral also argues that Plaintiffs have not proven that Detect is a successor-in-interest to Mott, which is necessary to support a claim of duty to defend and indemnify both Plaintiffs. (Doc. 26, at 11-12). Second, Admiral argues that Plaintiffs have not established that there was an "occurrence" within the Policies during the coverage period, January 14, 2015, and January 14, 2016, as Plaintiffs assert that the injuries manifested on June 18, 2018. (Doc. 26, at 12-17).

In opposition, Plaintiffs argue that the Certificate of Liability Insurance, which is attached to the complaint, provided Admiral with adequate notice to trigger coverage and that summary judgment must be denied because there are genuine issues of material fact and law. (Doc. 27, at 6-9).

### A.   DUTY TO DEFEND AND CONTRACT INTERPRETATION UNDER PENNSYLVANIA LAW[2]

Under Pennsylvania law, an insurer has a duty to defend its insured if the underlying complaint "potentially comes within the policy's coverage." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005); *see Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (2004) (holding that the interpretation of an insurance contract regarding the existence or non-existence of coverage is "generally performed by the court."). "An insurer's duty to defend its insured is broader than its duty to indemnify." *State Farm Fire & Cas. Co. v. Moreco Constr., Inc.*, 171 F.Supp.3d 373, 378 (E.D. Pa. 2016) (citing *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 672-73 (3d Cir. 2016)). "Under Pennsylvania law . . . a court ascertaining whether an insurer has a duty to defend its insured makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint." *State Farm Fire & Cas. Co.*, 171 F.Supp.3d at 378 (quoting *Ramara*, 814 F.3d at 672-73) (internal quotation marks omitted). "If the allegations of the underlying complaint *potentially* could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case." *State Farm Fire & Cas. Co.*, 171 F.Supp.3d at 378 (quoting *Ramara*, 814 F.3d at 672-73) (emphasis in original) (internal quotation marks omitted). If an underlying action against

---

[2] "A federal court sitting in diversity must apply state substantive law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted).

an insured "avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover." *State Farm Fire & Cas. Co.*, 171 F.Supp.3d at 378 (quoting *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)) (internal quotation marks omitted).

"In determining an insurer's duty to defend, we must consider only the allegations of the underlying action and may not look outside its 'four corners' or consider extrinsic evidence." *State Farm Fire & Cas. Co.*, 171 F.Supp.3d at 378 (citing *Ramara*, at 672-73) (stating that "[i]n *Ramara*, our Court of Appeals noted Pennsylvania's 'four corners' rule, also known as the 'eight corners' rule, directing 'a court in deciding if there is coverage [to] look at both the insurance policy and the underlying complaint'"). "We view the allegations of the underlying complaint as true and liberally construe the allegations in favor of the insured." *State Farm Fire & Cas. Co.*, 171 F.Supp.3d at 378 (citing *Ramara,* 814 F.3d at 673-74). "If there is any possibility coverage has been triggered by allegations in the underlying complaint, an insurer has a duty to defend." *State Farm Fire & Cas. Co.*, 171 F.Supp.3d at 378 (citing *Ramara,* 814 F.3d at 673-74).

Even in cases where only "a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover" on the covered claim. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). On the other hand, if the insurer can confine the complaint to "recovery that is not within the scope of the coverage," the insurer bears no duty to defend. *Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 164 (M.D. Pa. 2007) (quoting *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 202 n.18 (3d Cir. 2006)) (internal quotation marks omitted).

Interpreting an insurance contract is a question of law. *Meyer v. CUNA Mut. Ins. Soc'y,* 648 F.3d 154, 162 (3d Cir. 2011). In interpreting a contract, a court's primary goal "is to ascertain the parties' intentions as manifested by the policy's terms." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (2006). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (quoting *Gene & Harvey Builders, Inc. v. Pa. Mfrs. Ass'n Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986)).

B.    PLAINTIFFS HAVE NOT ESTABLISHED THAT DETECT IS A SUCCESSOR-IN-INTEREST TO THE POLICIES.

The underlying issue addressed by Admiral is whether it is responsible to defend and indemnify Detect in the Underlying Lawsuits. Admiral asserts that it need not because Detect is not the named insured on the Policies. (Doc. 26, at 11; Doc. 28, at 12). Admiral explains that "Plaintiffs' answers to Admiral's discovery requests assert that there was a stock purchase; however, Plaintiffs did not provide a copy of any agreement supporting the asserted stock purchase." (Doc. 26, at 11; Doc. 28, at 12). As noted by Admiral, Plaintiffs' brief in opposition to the instant motion for summary judgment failed to discuss Detect's alleged status as a success-in-interest. (Doc. 27; Doc. 28, at 13). The issue the Court must determine is whether Detect, under substantive Pennsylvania law, is a successor-in-interest to Mott for the purposes of assuming Mott's liabilities and obtaining the rights under Mott's insurance contract with Admiral.

Detect may be entitled to the insurance coverage if it is the successor-in-interest of Mott. Pennsylvania law provides that Detect can be a successor-in-interest of Mott if, *inter*

*alia*, it is consolidated or merged with Mott or if the business is merely a continuation of Mott. *Cont'l Inc. Co. v. Schneider, Inc.*, 873 A.2d 1286, 1291 (Pa. 2005). Thus, the Court must determine whether the evidence establishes Detect was merely a continuation of or merger with Mott.

The general rule in Pennsylvania is that, when one company sells all or substantially all of its assets to another company, the purchasing company is not liable as a successor. *Cont'l Ins. Co. v. Schneider, Inc.*, 810 A.2d 127, 134 (2002), *aff'd*, 873 A.2d 1286, 1291 (2005). One exception to that rule occurs when the purchasing company is "merely a continuation of the selling corporation," also known as a *de facto* merger. *Cont'l Ins. Co.*, 873 A.2d at 1291; *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 468 (3d Cir.2006) (noting that courts treat *de facto* merger and continuation identically). A *de facto* merger or mere continuation occurs when a new corporation is formed to acquire the assets of or take over a second corporation, which then ceases to exist. *See Cont'l Ins. Co.*, 810 A.2d at 134-35.

Pennsylvania law requires courts to consider the following four factors in determining whether a *de facto* merger has occurred between two entities: "(1) continuity of ownership; (2) cessation of the ordinary business by, and dissolution of, the predecessor as soon as practicable; (3) assumption by the successor of liabilities ordinarily necessary for uninterrupted continuation of the business; and (4) continuity of the management, personnel, physical location, and the general business operation." *Greenway Ctr., Inc. v. Essex Ins. Co.*, 369 F. App'x 348, 352 (3d Cir. 2010) (quoting *Cont'l Ins. Co.*, 810 A.2d at 135); *see also Berg Chilling*, 435 F.3d at 468-69. In *Berg*, the Third Circuit explained that the first factor, continuity of ownership, is the most important factor in the analysis, and that the absence of any continuing of ownership, therefore, creates a "strong presumption against imposing successor liability."

- 14 -

*Berg Chilling*, 435 F.3d at 469. "The objective of [the continuity of ownership] requirement is usually to identify situations in which shareholders of a seller corporation unfairly attempt to impose their costs or misdeeds on third parties by retaining assets that have been artificially cleansed of liability." *Greenway Ctr.*, 369 F. App'x at 352-53 (quoting *Berg Chilling,* 435 F.3d at 469). The Pennsylvania Superior Court confirmed that continuity of ownership is "a key element that must exist in order to apply the *de factor* merger doctrine, since in the absence of a transfer of stock for assets the consequence of the transaction is not the functional equivalent of a merger." *Greenway Ctr.*, 369 F. App'x at 352 (quoting *Fizzano Bros. Concrete Prods., Inc. v. XLN, Inc.,* 973 A.2d 1016, 1020 (Pa. Super. Ct. 2009)).

There is no holding similar to *Fizzano* under federal common law, making continuity of ownership essential. Nevertheless, it remains a very significant factor in this circuit under federal common law. *See U.S. v. General Battery Corp.,* 423 F.3d 294, 305 (3d Cir. 2005) (*de facto* merger found where seller obtained mostly cash, but also small amount of stock, since it represented an "ongoing interest in their assets"); *Einhorn v. M.L. Ruberton Construction Co.,* 665 F. Supp. 2d 463, 476 (D.N.J. 2009) (no *de facto* merger found in ERISA case where continuity of ownership did not exist, calling continuity of ownership "often critical"); *U.S. v. Exide,* Civ. A. No. 00–CV–3057, 2002 WL 319940 (E.D. Pa. Feb. 27, 2002) (*de facto* merger found in a CERCLA case where there was continuity of ownership); *U.S. v. Atlas Minerals & Chemicals,* Civ. A. No. 91–CV–5118, 1995 WL 510304, at *90 (E.D. Pa. Aug. 22, 1995) (no *de facto* merger found in a CERCLA case without continuity of ownership) (citing *HRW Systems, Inc. v. Washington Gas Light Co.,* 823 F. Supp. 318 (D. Md. 1993) ("most critical element of the test is continuity of ownership"), and *In Re Acushnet River and New Bedford*

*Harbor,* 712 F. Supp. 1010, 1015 (D. Mass. 1989) (calling continuity of ownership a "key requirement.")).

Here, the Underlying Lawsuits allege that "[u]pon information and belief Detect is the successor entity and/or purchased, subsumed, integrated, and/or is otherwise responsible for the assets and liabilities of Defendant Mott." (Doc. 3, at 16, 70). Similarly, Plaintiffs' complaint filed against Admiral in the Court of Common Pleas of Lackawanna County states, in relevant part, that "Plaintiff Detect Tank, LLC, is the successor in interest entity and purchased, subsumed, integrated Mott Tank Inspection, Inc." (Doc. 1-2, ¶ 3). In Admiral's answer to the complaint, it states:

> After reasonable investigation, Admiral is without knowledge or information sufficient to admit or deny the allegations contained in this paragraph, therefore, such allegations are denied, and strict proof is demanded at time of trial.
>
> By way of further response, Detect Tank LLC is not identified as a named insured, insured or additional insured in the Declarations, nor is Detect Tank LLC identified as a named insured, insured or additional insured in any endorsement added to any policy issued by Admiral. Moreover, neither Mott Tank Inspection, Inc. nor Detect Tank LLC have produced any information suggesting that Mott Tank Inspection, Inc. assigned any rights to any policy issued by Admiral to Detect Tank LLC.

(Doc. 3, ¶ 3).

A review of the record reveals that there is no evidence showing that Detect is in fact a successor-in-interest of Mott. Despite Admiral raising this issue in its filings with the Court, Plaintiffs have failed to supply any evidence to establish that Detect is a successor-in-interest of Mott. In the absence of a stock transfer, asset purchase, or any other evidence establishing that the owners of Mott became the owners of Detect, there is no basis for finding a continuity of ownership. Furthermore, consideration of the remaining factors–earliest practicable dissolution of the predecessor, assumption by the successor of the necessary liabilities, and

the continuity of the management and general operations—do not support a finding of *de facto* merger as there is no evidence to consider. Taking the four factors together, the Court cannot conclude that Detect is a continuation of Mott and, thus, the Court finds that Detect cannot take advantage of Mott's insurance policy on that basis. *Greenway Ctr.*, 369 F. App'x at 354 (finding company was not a successor-in-interest and could not obtain rights under other company's insurance policy).

Accordingly, summary judgment is granted in favor of Admiral as to all claims brought by Plaintiff Detect.

C.      THE UNDERLYING LAWSUITS ALLEGE A "BODILY INJURY."

Next, the Court must first address Admiral's argument that it has no duty to defend Plaintiffs in the Underlying Lawsuits because the underlying complaints do not allege any "bodily injury." The Primary Policy provides that "[w]e will pay those sums that the insured become legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. 28-1, at 5). Neither party contends that property damage is implicated in this case. Therefore, the alleged acts or omissions of Plaintiffs set forth in the underlying complaints must fall within the definition of "bodily injury" in order for the Underlying Lawsuits to have triggered Admiral's duty to defend. In making the determination of whether there is a duty to defend, the Court is mindful that "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint." *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 926 (Pa. Super. Ct. 2004) (quoting *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)).

The Primary Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. 28-1, at 24). The factual allegations in the Underlying Lawsuits allege negligence on the part of Plaintiffs as follows:

> Prior to the subject incident which took place on June 12, 2018, Tank 2 was last inspected on June 9, 2015 by Defendant Mr. Alden Ayers within his normal course and scope of his employment or agency relationship with Defendant Mott.

> (Doc. 3, at 22, 75).

In Count XI of the underlying complaints, Underlying Plaintiffs allege:

> The negligence, carelessness, and recklessness of the Inspection Defendants, their agents, ostensible agents, servants, workmen, employees, and/or independent contractors, jointly and/or severally consists of, but is not limited to, the following:

>> a. failure to use due care under the circumstances; . . . .

> Prior to the design, construction, installation and placing of Tank 2 and Vault 2 into the stream of commerce and injury caused to the [Underlying Plaintiffs] on June 12, 2018, Defendants knew or should have known with adequate inspection and/or testing, that the subject Tank and Vault were in a defective and dangerous condition and that because of the defects, the Tank and Vault could not be used safely for the purpose for which they were intended.

> The negligence and recklessness of Inspection Defendants, their agents, ostensible agents, servants, workmen, employees, and/or independent contractors, as set forth herein was the proximate and sole cause of the injuries and damages to the [Underlying Plaintiffs] and expenses incurred as set forth above.

> (Doc. 3, at 50-52, 104-06).

Admiral argues that Plaintiffs have failed to establish a claim within the coverage of the Policies because "[t]here are no allegations in the Underlying Lawsuits asserting that a 'bodily injury' of any kind occurred on June 9, 2015, when Mott inspected the subject tank," and "there are no allegations in the Underlying Lawsuits asserting that a 'bodily injury' of

any kind took place during the policy period, January 1, 2015 to January 1, 2016." (Doc. 28, at 8-9). Conversely, Plaintiffs argue that "there is no doubt that the Plaintiffs have been sued in two (2) underlying civil actions relating to allegations of a negligent inspection of a gasoline storage tank performed by Defendant Mott Tank Inspection, Inc., on or about June 9, 2015." (Doc. 27, at 9).

Upon consideration of the "four corners" of the Underlying Lawsuits and liberally construing the allegation of Plaintiffs, the Court finds that it is, indeed, possible that the general allegations could be determined to encompass and premise liability upon a "bodily injury" that took place as a result of an allegedly negligent inspection that occurred during the Policies' coverage period. *State Farm Fire & Cas. Co.*, 171 F.Supp.3d at 378. Though Admiral is correct that Underlying Plaintiffs sustained bodily injuries on June 12, 2018, when Vault 2 exploded, the Court notes that Underlying Plaintiffs also assert that the negligence and recklessness of Plaintiffs "was the proximate and sole cause of the injuries and damages[.]" (Doc. 23, at 1). Therefore, the Court rejects Admiral's first argument for summary judgment because Underlying Plaintiffs allege Plaintiffs' acts or omissions fall within the definition of "bodily injury."

D.   THE UNDERLYING LAWSUITS DO NOT ALLEGE AN "OCCURRENCE."

Admiral also argues that it owes no defense obligations to Plaintiffs because the Underlying Lawsuits do not allege an "occurrence." (Doc. 26, at 12; Doc. 28, at 13). An occurrence policy protects an insured for acts that occur during the policy period, regardless of when a claim is made. *Fed. Ins. Co. v. Dentsply Int'l Inc.*, No. 1:06-CV-991, 2007 WL 4150664, at *2 (M.D. Pa. Nov. 19, 2007) (citing *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 534-35 n.3 (1978); *City of Erie v. Guar. Nat'l Ins. Co.*, 109 F.3d 156, 158-59 (3d Cir.

1997)). The parties agree that the Policies are "occurrence"-based. (Doc. 26, at 13; Doc. 27, at 9). Thus, the Court's analysis must focus on whether the underlying circumstances leading to Plaintiffs' expected liability "occurred" during the life of the Policies.

Here, the Primary Policy provides coverage for liabilities arising from bodily injuries that: (1) were caused by an "occurrence" that took place in the "coverage territory"; and (2) "occur[ed] during the policy period." (Doc. 28-1, at 5). The Primary Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 28-1, at 26). The Policies do not define "accident." The Policies provide that Admiral's obligation to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" attaches "only if" the "bodily injury" "occurs during the policy period." (Doc. 28-1, at 5). Pursuant to the Declarations of the Primary Policy, the policy period for the Primary Policy runs from January 1, 2015, to January 1, 2016. (Doc. 28-1, at 1). To determine whether the Policies provided coverage, the Court must determine the occurrence and then determine when it took place.

### 1.    Number of Occurrences

Under Pennsylvania law, the number of "occurrences" in a commercial general liability policy is determined by application of the "cause of loss" test. *Liberty Mut. Ins. Co. v. Treesdale Inc.*, 418 F.3d 330, 335-36 (3d Cir. 2005). The "cause of loss" test defines the number of occurrences "by the cause or causes of the resulting injury." *D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 860 (Pa. 1986) (quoting *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir. 1982)). Thus, if a court finds that there is a single "proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage," then the court must conclude that there is a single "occurrence" for the purposes of coverage. *Appalachian Ins. Co.*,

676 F.2d at 61; *see also Scirex Corp. v. Fed. Ins. Co.*, 313 F.3d 841, 852 (3d Cir .2002) ("[T]he accepted purpose of defining 'an occurrence or event' is to limit liability, and in the insurance industry 'occurrence' is commonly understood to mean all loss caused by a single act or related events.").

If a court can identify a common source of the injuries, and thus a single occurrence, it is immaterial that multiple individuals were injured as a result. *Treesdale*, 418 F.3d at 336 (stating that "a single occurrence can clearly result in injuries to multiple persons"); *accord Champion Int'l Corp. v. Continental Cas. Co.*, 546 F.2d 502, 505 (2d Cir. 1976) (finding a single occurrence where manufacturer of vinyl-covered paneling became obligated to pay $1.5 million after the paneling "split apart" on nearly 1400 vehicles manufactured by 26 companies).

In this case, the parties do not dispute for purposes of summary judgment that the injuries in the Underlying Lawsuits each arose from a common source: the explosion of Vault 2 on June 18, 2018. (Doc. 26, at 12; Doc. 27, at 8; Doc. 28, at 13). Thus, the losses at issue in this case can all be said to have been caused by a single occurrence.

### 2.   Timing of Occurrences

Having determined that there is a single occurrence under the Plaintiffs' Policies, the Court must determine when that occurrence took place. Under the terms of the Policies, coverage only takes effect if a "bodily injury" occurs during the policy period, commencing on January 14, 2015, and expiring on January 14, 2016. (Doc. 28-1, at 5; Doc. 28-2, at 1).

Pennsylvania courts have adopted an "effect" test to determine the timing of an occurrence. *D'Auria,* 507 A.2d at 861. In *Appalachian Ins. Co.,* the Third Circuit explained that "the determination of when an occurrence happens must be made by reference to the time

when the injurious effects of the occurrence took place." 676 F.2d at 61-62. "There can be no question but that the aspect of the occurrence which must take place within the policy period is the 'result,' that is, the time when the accident or injurious exposure produces personal injury." *Appalachian Ins. Co.*, 676 F.2d at 62. "In many cases, the time of the cause and effect coincide. However, when an injury does not immediately follow the cause giving rise to the injury (as is the case here), courts must determine which policies are 'triggered' by the underlying occurrence."[3] *Fed. Ins. Co.*, 2007 WL 4150664, at *3. The date on which an injury was first manifested solely depends upon the facts pled in the complaint. *D'Auria*, 507 A.2d at 860. Once again, the cause of the injury is not pertinent to determining when an occurrence took place. *D'Auria*, 507 A.2d at 861.

In this case, applying the "effects" test, the Court finds that the injuries alleged by Underlying Plaintiffs occurred well outside of the policy period. The Underlying Lawsuits allege negligence on the part of Plaintiffs as follows: "Prior to the subject incident which took place on June 12, 2018, Tank 2 was last inspected on June 9, 2015 by Defendant Mr. Alden Ayers within his normal course and scope of his employment or agency relationship with Defendant Mott." (Doc. 3, at 22, 75). Underlying Plaintiffs contend that "[t]he negligence and recklessness of Inspection Defendants, their agents, ostensible agents, servants, workmen, employees, and/or independent contractors, as set forth herein was the proximate and sole cause of the injuries and damages to the [Underlying Plaintiffs] and expenses incurred as set forth above." (Doc. 3, at 50-52, 104-06). However, the Court finds that there no allegations

---

[3] The "effects" test is in line with the reasonable expectations of both the insurer and the insured. *See Appalachian Ins. Co.,* 676 F.2d at 62. A policyholder could "reasonably expect[ ] to be indemnified for injuries occurring during the policy period." *Appalachian Ins. Co.,* 676 F.2d at 62. Similarly, an insurance provider would not expect to be liable for injuries that could occur many years after a policy has lapsed.

in the Underlying Lawsuits and Plaintiffs have offered no proof to support the proposition that any person suffered a "bodily injury" of any kind during the period January 14, 2015 to January 14, 2016. *See Reginella Constr. Co. v. State Farm Fire & Cas. Co.*, No. CA 15-989, 2016 WL 454313, at *4 (W.D. Pa. Feb. 5, 2016) (finding that insurance policy coverage was not triggered where damage and manifestation of damage commenced after policy period ended). Rather, Plaintiffs acknowledge that the only incident of "bodily injury" took place on June 12, 2018, which resulted in the death of Joseph Vigilante and the injuries to Frank Tomasiello. The Policies plainly provide for coverage during the specified time period upon the occurrence of an event contemplated by the Policies. Since the underlying accident occurred after the Policies expired, the Court finds that it was not a loss that was covered under the Policies. Consequently, Admiral has no duty to provide a defense or indemnification coverage to Mott.

Accordingly, summary judgment shall be granted in Admiral's favor.

## IV.  CONCLUSION

For the foregoing reasons, Admiral's motion for summary judgment (Doc. 25) is **GRANTED**.

An appropriate Order follows.

Dated: June 30, 2023

s/ Kardine Mehalchick
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**